JONES, Justice
(dissenting in part and concurring in part) :
I concur in the result reached by the majority of the Court, but with all deference dissent insofar as the opinion bases its decision on a holding that the lender did not exercise due care to see that a copy of the original statement was given to the borrowers.
I think the lender had a great deal more upon which to rely than the mere statement in the note that the required documents had been given.
*877 The main opinion quotes a part of Mississippi Code of 1942 Annotated (Supp.1964) section 5591-02, “Definitions,” hut omits therefrom in the paragraph defining “licensee,” that part which reads as follows:
“(a) Handling loans for a borrower for a fee, commission or charge paid by the borrower, and who arranges, negotiates, obtains or procures a loan of money for the borrower, to be paid back in monthly installments * *
The word “licensee” refers both to the broker and to the lender. The broker being one who arranges, negotiates, obtains or procures a loan of money for the borrower, must necessarily be the agent of the borrower.
In the same section (5591-02, Definitions) under paragraph (3), it is said:
“The term 'service charge’ as used in this act shall be construed to mean the amount charged a borrower, exclusive of the legal rate of interest, and other charges specifically allowed by this act, for services rendered or to be rendered the borrower by the licensee in arranging or negotiating a loan and for the accounting, guaranteeing, endorsing, collecting and other actual services rendered the borrower by the licensee.” (Emphasis added.)
Under section 5591-03, both the broker and the lender are required to have a valid and subsisting license from the State of Mississippi as provided by the “Small Loan Privilege Tax Act.”
In the Act known as “Small Loan Privilege Tax Act,” section 5591-32, “Definitions,” it is also provided that the word “licensee” shall mean and include both the broker and the lender, and section 5591-33 requires a license for both parties. Section 5591-35 provides for the application for license and details the information to be shown by such application.
After the application has been made the comptroller (of State Banks) is required by section 5591-39 to:
“ * * * malte an investigation for the purpose of determining whether or not the financial responsibility, previous experience, character, and general fitness of the applicant (including the members thereof if the applicant is a firm, partnership or association, and the officers and directors thereof, if the applicant is a corporation) are such as to merit the respect and confidence of the comnnmity in which the business is to be operated and to warrant the belief that said business will be operated honestly, fairly, efficiently and in compliance with the provisions of the applicable laws of this state, and the regulations promulgated by the department(Emphasis added.)
The license is not to be issued until the foregoing matters are determined in the affirmative.
The broker who negotiated this loan forwarded the papers evidencing same to the lender after having endorsed them and guaranteed payment of the loan. The papers as shown in the majority opinion contained a statement that the papers required by the statute had been given the borrowers
We are of opinion that when the State, after having investigated and determined that the broker was one whose general fitness, financial responsibility, previous experience and character supported the belief that his business would be operated in compliance with the provisions of the law, thereafter issued its license to him, this was a representation by the State to those engaged in lending money that they were warranted in relying upon the statements and representations of the licensed broker. There is no question that the broker in this case was licensed and that he endorsed and guaranteed the payment of said loan. These facts, coupled with the statement of the borrower, whose agent the broker was at that time, warranted the lender in relying *878 upon the statement in the note. Also, the broker (found by the State to be financially responsible) had endorsed and guaranteed the payment of the loan and had forwarded the note to the lender with an assignment with recourse and the act of the lender in relying thereupon was not a failure to exercise due care. The State had represented to the lender that this particular broker was a man whose experience, character and financial responsibility warranted the belief that the business would be operated honestly, fairly, efficiently and in compliance with the provisions of the laws of the State. We can not see how, when the State said this to the lender, the lender would be guilty of a lack of due care in relying upon the statement of the broker and upon the fact that he personally guaranteed the payment of the loan.
I do agree that the majority opinion reached the right result, basing its holding on failure to deliver to the borrower a receipt for each payment as provided by section 5591-14(a) (2).
It is our conception that after the broker had negotiated the loan, had endorsed and guaranteed same, and secured the money from the lender, he was no longer the agent of the borrower because his position as collector of payments would be inconsistent with an agency for the borrower, but would be consistent with an agency for the lender. Moreover as provided in section 5591— 02, “Definitions,” Paragraph (3), the term “service charge” covers not only the services rendered to the borrower in arranging or negotiating a loan and guaranteeing same, etc., but covers "collecting’1 and other actual services.
If the legislature had intended at this point for the broker to be the agent of the borrower, they would not have used the word “collecting.” The proper term, if it was intended that the broker be the agent of the borrower, would have been that he was being compensated for “paying or transmitting payments” on said loan rather than for “collecting payments.”
We are of opinion that the majority was in error in holding the lender did not exercise due care in the making of the loan. We think the result should have been based upon the fact that the broker in “collecting” as authorized by the legislature was acting as agent of the lender and that he knowingly or carelessly or without the exercise of due care failed to deliver receipts for payments made, and therefore his principal was charged with such failure.